UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BRODERICK DEON TAYLOR                    CIVIL ACTION NO. 07-1817

VERSUS                                    JUDGE S. MAURICE HICKS, JR.

CITY OF SHREVEPORT, ET AL.                MAGISTRATE JUDGE HORNSBY

MEMORANDUM RULING

I.  INTRODUCTION

    A.  Background.

The plaintiff, Broderick Deon Taylor ("Taylor"), asserts federal and state law claims for damages arising from the traffic stop of Taylor by Officer Kevin Duck ("Officer Duck") and Officer Wiley Lindsay ("Officer Lindsay"). The named defendants,[1] Officer Duck, Officer Lindsay, Chief of Police Mike Campbell ("Chief Campbell"), Interim Chief of Police Mike VanSant ("Interim Chief VanSant"), and the City of Shreveport ("the City") (collectively, "the defendants") filed a Motion to Dismiss (Record Document 10) that is now before the Court. Taylor responded to the motion by filing a First Supplemental and Amending Complaint and a memorandum in opposition. See Record Documents 14 & 17. The defendants subsequently filed a reply brief. See Record Document 21.

The defendants admit no wrongdoing, but do concede that under the procedural rules applicable to this motion, Taylor has properly plead Fourth Amendment claims against Officer Duck and the City for his detention and/or arrest; Fourth Amendment claims against Officer Duck for excessive use of force; and associated state law claims

---

[1] In his Complaint, Taylor named the Shreveport Police Department as a defendant. See Record Document 1, ¶¶ 6, 8. Yet, in his First Supplemental and Amending Complaint, Taylor amended paragraphs six and eight, deleting any reference to the Shreveport Police Department as a defendant. See Record Document 17, ¶¶ 6, 8.

against Officer Duck and the City for detention, arrest, and use of force. See Record Document 21 at 10. The defendants challenge all other claims asserted. For the reasons that follow, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

      B.      **The Allegations Made by Taylor**.

The factual allegations in Taylor's lawsuit, which must be accepted as true in considering a motion to dismiss, can be summarized as follows. In the early-morning hours of November 3, 2006, Officer Duck and Officer Lindsay, who were driving in separate patrol cars, initiated a traffic stop of a vehicle driven by Taylor on or near March Street in Shreveport, Louisiana. After Taylor's vehicle was stopped, Officer Duck, whose patrol car was parked behind Taylor's vehicle, approached the driver's side of Taylor's vehicle with his gun drawn. Officer Lindsay, whose patrol car was parked behind Officer Duck's patrol car, approached Taylor's vehicle, several feet behind Officer Duck, with his gun holstered. In an attempt to comply with Officer Duck's commands, Taylor exited his vehicle. As Taylor tried to exit his vehicle, Officer Duck grabbed him, pulled him, and struck him in the back of the head with Officer's Duck's firearm. Officer Duck then threw Taylor to the ground. At that time, Officer Lindsay drew his firearm and moved toward the passenger side of Taylor's vehicle.

As a result of being struck with Officer Duck's firearm, Taylor lost consciousness. When he regained consciousness, he was handcuffed and in the back of a marked, Shreveport Police Department patrol car.[2] Taylor remained handcuffed in the patrol car

---

[2]Many of the details in the original complaint and first supplemental and amending complaint concerning the traffic stop and the conduct of Officer Duck and Officer Lindsay are drawn from viewing a video recording of this incident provided by the

while his passenger was questioned. Taylor and his passenger were eventually released without being charged with any crime or offense and without receiving a warning or a citation.

Taylor further alleged that Officer Duck and Officer Lindsay violated Shreveport Police Department policies, procedures, and rules by failing to make any report of the above described incident. He averred that Chief Campbell failed to establish and/or enforce reasonable policies related to police use of force, failed to supervise officers and their use of force properly and adequately, and/or failed to train officers properly and adequately in the practices and procedures for use of force, particularly in relation to traffic stops and the detention of drivers who are compliant with police commands. Taylor also contended that despite findings by the Internal Affairs Division (which confirmed that Officer Duck violated policies by using excessive force and by failing to report his use of excessive force and that Officer Lindsay violated policies by failing to report Officer Duck's use of excessive force), the City, Chief Campbell, and Interim Chief VanSant failed to punish Officer Duck and Officer Lindsay adequately.

Taylor alleged that there were a number of incidents before November 3, 2006, in which members of the Shreveport Police Department, including Officer Duck, harassed and intimidated Taylor and his family and seized property from him. Taylor maintained that Chief Campbell knew or should have known of these incidents. He also alleged that members of his family reported this harassment and intimidation to the

---

Shreveport Police Department. See Record Document 14 at 5-6. However, additional video of the traffic stop from Officer Duck's and Officer Lindsay's patrol cars that recorded the words and conduct of Officer Duck, Officer Lindsay, and Taylor, both before and after Officer Duck struck Taylor, is no longer in existence. See id.

Shreveport Police Department, but to no avail.  Taylor further alleged that the City and Chief Campbell condoned this harassment and intimidation, resulting in him and his family being forced to move from the neighborhood and home.

In the First Supplemental and Amending Complaint, Taylor alleged that the City, Chief Campbell, and Interim Chief VanSant established customs, policies, and practices which directly and proximately caused the deprivation of his rights.  He contended that these customs, policies, and practices are shown by six non-exclusive incidents involving allegations of excessive force during traffic stops against Shreveport Police Department officers.

## II. LAW AND ANALYSIS

### A. Rule 12(b)(6) Standard.

In deciding a Rule 12(b)(6) motion to dismiss, the district court must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007).  Notwithstanding, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face." Id., citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.  Yet, if the allegations set forth in the complaint, even if true, could not raise a claim of entitlement to relief, the court will expose the basic deficiency "at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007).

### B. Qualified Immunity and Rule 12(b)(6).

The Fifth Circuit applies "a heightened pleading standard which must be satisfied whenever there is alleged a defense of qualified immunity." Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994). This heightened pleading standard requires that "the complaint . . . state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." Id. The law does "not require that an official demonstrate that he did not violate clearly established federal rights; [Fifth Circuit] precedent places that burden upon plaintiffs." Pierce v. Smith, 117 F.3d 866, 872 (5th Cir. 1997); see also Wicks v. Mississippi State Employment Services, 41 F.3d 991 (5th Cir. 1995) (when faced with a motion to dismiss, the complaint must allege specific facts to negate qualified immunity).

### C. Fifth Amendment Claim.

The defendants argued that Taylor failed to state a Fifth Amendment claim. See Record Document 10-2 at 10. In his opposition, Taylor conceded that he has no Fifth Amendment claim and the First Supplemental and Amending Complaint has no reference to such claim. See Record Document 14 at 15. As the parties agree that Taylor did not state a claim under the Fifth Amendment, the Motion to Dismiss is **granted** in this regard.

### D. Fourth Amendment Excessive Force/Failure to Intervene Claims.

"In order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege '(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need and the excessiveness of which was (3)

objectively unreasonable.'" Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996) (quoting Spann v. Rainey, 987 F.2d 1110, 1115 (5th Cir. 1993)). The defendants concede that a claim has been articulated in Taylor's complaint against Officer Duck, but contend that no cognizable claim has been asserted against Officer Lindsay. See Record Document 10-2 at 4-5; Record Document 21 at 3-4.

Taylor responded that both the original Complaint and the First Supplemental and Amending Complaint contain allegations that Officer Lindsay was present when Officer Duck used excessive deadly force and failed to stop or attempt to stop the use of excessive force. See Record Document 14 at 4. Essentially, Taylor has alleged a claim against Officer Lindsay for failure to intervene.

The Fifth Circuit has recognized that "an officer who is present at the scene [where excessive force is used] and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995). A critical inquiry in a failure to intervene claim is whether the officer "had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it." Id.

The defendants contend that Taylor has failed to state a claim against Officer Lindsay for failing to intervene. See Record Document 21 at 3. They point to Taylor's own characterization of Officer Duck's conduct in alleging Taylor's failure to state a claim. See Record Document 21 at 3-4. Taylor's complaint alleged that "[Officer] Duck suddenly, unexpectedly, without consent, [and] without warning . . . grabbed Taylor, pulled Taylor toward [Officer] Duck, struck Taylor in the back of the head with [Officer] Duck's firearm, and threw Taylor to the ground." Record Document 1 at ¶ 16. The

defendants assert that since the alleged excessive force happened so suddenly, Taylor has "not contend[ed] that the use of force was such that Officer Lindsay would have had a reasonable opportunity to have intervened once Officer Duck began to use force." Record Document 21 at 3.

Defendants are correct that Taylor described the incident as sudden and unexpected, and never explicitly stated that Officer Lindsay had a reasonable opportunity to intervene. However, Taylor has alleged facts that raise questions as to whether Officer Lindsay's inaction was objectively unreasonable in light of the circumstances. In his complaint, Taylor described what initially appeared to be a routine traffic stop. See Record Document 1 at ¶ 13. Officer Duck, with Officer Lindsay in tow, approached Taylor's car. See Record Document 17 at ¶ F. Officer Duck drew his service weapon while Officer Lindsay kept his holstered. See id. These factual allegations appear to be enough to raise a right to relief above the speculative level. If the Court assumes Taylor's statement of facts to be true, it questions whether Officer Duck drawing his weapon during a routine traffic stop was excessive and an act sufficient to alert Officer Lindsay that there could be an escalation of force, such that he should be prepared to take reasonable measures to protect Taylor against any use of excessive force. Further, the Court would like the benefit of more discovery before considering the suddenness and unexpectedness of Officer Duck's actions. Thus, the Motion to Dismiss must be **denied** on this claim, as Taylor has plead facts sufficient to raise a right to relief above the speculative level.

### E.     Fourth Amendment Unreasonable Arrest/Detention Claims.

Taylor has also asserted claims against Officer Duck and Officer Lindsay for

detention without reasonable suspicion and arrest without probable cause. See Record Document 14 at 9. The defendants conceded that Taylor has stated a claim against Officer Duck for an unreasonable detention and arrest. See Record Document 21 at 5. However, the defendants argue that Taylor has failed to state a claim against Officer Lindsay for a detention or arrest sufficient to overcome qualified immunity. See id. Specifically, they argue that Taylor's allegation that Officer Lindsay somehow "initiated" the traffic stop is wholly unfounded and maintain that Taylor's conclusory claims against Officer Lindsay should not survive the Motion to Dismiss.

A review of Taylor's complaint reveals allegations that Officer Lindsay was present during the entire incident and either acquiesced in, or was complacent in, Taylor's detention and arrest. See Record Document 1 at ¶¶ 17-19; Record Document 17 at ¶ I. In his First Supplemental and Amending Complaint, Taylor alleged that after Officer Duck struck him and threw him on the ground, Officer Lindsay drew his firearm and also moved toward Taylor's vehicle. See Record Document 17, ¶ G(16)(a). He further alleged that he was knocked unconscious and later woke up, handcuffed, in the back of one of the patrol cars on the scene. See Record Document 1 at ¶ 18; Record Document 17 at ¶ H. Because of Taylor's loss of consciousness and the limited factual record at this stage, there are questions regarding who handcuffed Taylor and who placed him the back of the police cars. Taylor could not provide more detailed factual allegations regarding Officer Lindsay's involvement, as he was unconsciousness during key portions of the incident. Therefore, the Court **denies** the Motion to Dismiss as to Taylor's Fourth Amendment claims against Officer Lindsay for detention without reasonable suspicion and arrest without probable cause.

F.  **Harassment and Intimidation Claims.**

Taylor alleged that he and his family were harassed and that property from his home was seized by several Shreveport police officers, including Officer Duck. See Record Document 1 at ¶¶ 32-35; Record Doc. 17 at ¶ L.  Defendants argue that these allegations are entirely conclusory and fail to set forth a valid claim.[3]  See Record Document 10 at 9-10.  The Court agrees.

Taylor alleged that the City and Chief Campbell "knew or should have known" that he and his family were being harassed.  See Record Document 1 at ¶ 33; Record Document 17 at ¶ L.  Under the Rule 12(b)(6) standard facing Taylor, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level and must be sufficient to overcome the defense of qualified immunity.  Taylor has failed to meet this burden.  He has merely alleged that harassment and seizures occurred at unspecified times and under unspecified circumstances.  As stated by the defendants, "[Taylor] provide[d] no information that can be evaluated regarding any action by any person, particularly not defendants [Officer] Duck, [Chief] Campbell, or the City."  Record Document 10 at 10.  Thus, in its current form, Taylor's complaint lacks the requisite specificity to overcome the heightened pleading requirement.  Accordingly, the Motion to Dismiss is **granted** as to Taylor's harassment and intimidation claims.

---

[3] The defendants also assert that Taylor does not have the standing to allege that his family members were harassed.  See Record Document 10 at 9-10.  This point, however, is moot, as the Court has determined that Taylor has failed to set forth a cognizable claim for harassment and intimidation in the first instance.

### G. Denial of Medical Care.

Taylor alleged that after he was assaulted and rendered unconscious, Officer Duck and Officer Lindsay failed to request or provide any medical care for him, thus acting with deliberate indifference to a substantial risk of serious medical harm and resulting injuries in violation of his Fourteenth Amendment rights. See Record Document 17, ¶ I. Even in light of the heightened pleading standard, the Court finds that Taylor has plead sufficient specific facts, namely that he was rendered unconscious and **no** medical attention was provided, to allow his Fourteenth Amendment claim of denial of medical care against Officers Duck and Lindsay to proceed. In reaching this decision, the Court notes that Taylor's alleged medical condition, i.e., his unconsciousness, would have been open and obvious and an exceptional circumstance obviously requiring immediate medical attention. See Bias v. Woods, No. 05-10890, 2008 WL 2902565, **4 (5th Cir. July 29, 2008) ("Bias's medical condition [unconsciousness] . . . was 'open and obvious' and 'an exceptional circumstance obviously requiring immediate medical attention.'"); see also Austin v. Johnson, 328 F.3d 204, 210 (5th Cir. 2003) ("failure to call an ambulance for almost two hours while [the prisoner] lay unconscious and vomiting rises to the level of deliberate indifference."). The Motion to Dismiss is **denied** as to Taylor's denial of medical care claim against Officer Duck and Officer Lindsay.

Conversely, Taylor has plead no basis for Section 1983 municipal or supervisory liability in relation to the denial of medical care claim. Taylor has not alleged sufficient factual allegations against Chief Campbell or Interim Chief VanSant to raise a right to relief above the speculative level as to the denial of medical care claim. With the factual

allegations before it, the Court is unable to evaluate whether Chief Campbell and Interim Chief VanSant would have been on notice prior to the November 2006 incident that any alleged inadequate training or supervision of Officer Duck and Officer Lindsay would result in the denial of medical care such that Chief Campbell's and Interim Chief VanSant's conduct could be considered deliberately indifferent to Taylor's rights. There is also no allegation that the City failed to provide its police officers with adequate and proper training to care for detainees, such as Taylor, who are in their custody and in obvious medical distress. Likewise, Taylor has not plead that the City lacked a policy regarding the treatment and handling of persons in such a condition. The Motion to Dismiss is **granted** as to Taylor's denial of medical care claim against the City, Chief Campbell or Interim Chief VanSant.[4]

### H. Remaining Federal Claims Against the City, Chief Campbell and Chief VanSant.

Taylor alleged improper policies, customs, and practices on the part of the City, Chief Campbell, and for the handling of traffic stops and the use of force during traffic stops, particularly routine traffic stops. See Record Document 1, ¶¶ 40-41; Record Document 17, ¶ M(40). He further maintained that these customs, policies, and practices directly and proximately caused his harm. Record Document 1 at ¶ 40; Record Document 17 at ¶ M(40). Taylor also alleged that there was improper training, supervising, and disciplining of police officers relative to the use of force, particularly use of force against drivers during routine traffic stops. See id. The defendants argued

---

[4] While the Court has dismissed the Section 1983 municipal and supervisor liability claims in relation to denial of medical care, Taylor's state law claim against the City based on vicarious liability for Officer Duck's and Officer Lindsay's alleged denial of medical care remains.

that Taylor has failed to state a claim establishing that these practices, policies, and procedures are in place. See Record Document 10 at 5-6, 8; Record Document 21 at 5-6.

When a Section 1983 claim is asserted against a city, a court must determine: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation. See Rios v. City of Del Rio, Tex., 444 F.3d 417, 426 (5th Cir. 2006). Municipalities cannot be held liable under Section 1983 on a *respondeat superior* theory, so a plaintiff must allege that the action is pursuant to the city's official policy, custom or practice. See Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978). In doing so, the plaintiff must allege facts to prove (1) a policy or custom existed, (2) the policy makers had actual or constructive knowledge of its existence, (3) a constitutional violation occurred, and (4) the custom or policy served as the moving force behind the violation. See Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 532-33 (5th Cir.1996); Frazier v. City of Shreveport, No. 02-0698, 2006 WL 3716092, at *4 (W.D.La. Dec. 13, 2006). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur . . . ." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir.2001). Isolated unconstitutional acts of city employees will almost never trigger municipal liability. See id.

Here, Taylor has alleged that he suffered a knot on the back of his head, headaches, dizziness, slurred speech and vision, and flashbacks as a result of the application of excessive force by Officer Duck and Officer Lindsay. See Record Document 1, ¶¶ 37-38; see Bush v. Strain, 513 F.3d 492, 501 (5th Cir.2008) (In a

Section 1983 claim against a municipality based on a Fourth Amendment violation, a plaintiff must first allege that he suffered an injury that resulted from force that was excessive and objectively unreasonable.). As Taylor alleged that he suffered physical injuries as a result of an excessive and unprovoked application of force by the officers, he met this initial burden. Taylor also alleged that the City's customs, policies, and practices for handling traffic stops with regard to use of force were inadequate, unreasonable, and improper. See Record Document 1, ¶¶ 40-41; Record Document 17, ¶ M(40). Although Taylor may not have provided the detailed allegations outlined in Meadowbriar supra, he arguably met the liberal pleading standard of Federal Rule of Civil Procedure 8(a). See Mack v. City of Abilene, 461 F.3d 547, 556 (5th Cir.2006). Accordingly, Taylor's claims against the City for violations of his Fourth Amendment right to be free from excessive force survive the Motion to Dismiss.

When a Section 1983 claim is asserted against a supervisor, a plaintiff must show that: (1) the supervisor either failed to supervise, train, or discipline the officer; (2) a causal connection existed between the failure to supervise, train, or discipline and the violation of the plaintiff's rights; and (3) the failure to supervise, train, or discipline amounted to deliberate indifference. See Gates v. Tex. Dept. of Protective and Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). The plaintiff must prove that the supervisor failed to control an officer's "known propensity for the improper use of force." Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir.2005). In addition, the plaintiff must demonstrate at least a pattern of violations similar to what transpired in the instant case such that the inadequacy of the training is likely to result in a constitutional violation. See Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 382 (5th

Cir.2005).

Here, Taylor alleged that the customs, policies, and practices of the City, Chief Campbell, and Interim Chief VanSant included inadequate, unreasonable, and improper hiring, training, supervising, and disciplining of police officers relative to the use of force. In his First Supplemental and Amending Complaint, and as required by Estate of Davis supra, Taylor sets out a "non-exclusive" list of six incidents of excessive force being used by Shreveport police officers during traffic stops. See Record Document 17 at ¶ M. Thus, Taylor has stated claims against the City, Chief Campbell, and Interim Chief VanSant that they failed to properly train, supervise, and discipline police officers relative to the use of force survive the Motion to Dismiss.

### I. State-Created Danger Claim (Fourteenth Amendment).

The defendants contend that Taylor's brief reference to the Fourteenth Amendment as a basis for his claims is insufficient to survive dismissal. See Record Document 10-2 at 10. They further urge that since other amendments, such as the Fourth Amendment, provide "'an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process,' must be the guide for analyzing these claims." Albright v. Oliver 510 U.S. 266 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). Relying on Breen v. Texas A & M University, 485 F.3d 325, 332 (5th Cir. 2007), Taylor responds by arguing that he has stated a Fourteenth Amendment claim under the state-created danger theory of Section 1983 liability. See Record Document 14 at 16.

The state of the law in relation to the state-created danger theory is unsettled in

the Fifth Circuit. Thus, a brief discussion of the theory and Fifth Circuit case law discussing the doctrine is in order.

As a general matter, the reach of the substantive components of the Fourteenth Amendment's Due Process Clause is limited. See Breen v. Texas A & M University, 485 F.3d 325, 332 (5th Cir. 2007) [hereinafter Breen I], withdrawn in part, 494 F.3d 516 (5th Cir. 516) [hereinafter Breen II]. "While it is clear that individuals have a substantive due process right to be free from state-occasioned bodily harm, it is equally clear that ***the Constitution does not, as a general matter, impose upon state officials a duty of care to protect individuals from any and all private harms***." Breen I, 485 F.3d at 333 (emphasis added), citing DeShaney v. Winnebago Country Dep't of Soc. Servs., 489 U.S. 189, 196-197, 109 S.Ct. 998 (1989). In Breen I, the Fifth Circuit acknowledged that the Supreme Court had recognized two possible exceptions to the aforementioned general rule:

> First, the [DeShaney] Court stated that the Constitution imposes upon the state a duty of care towards individuals who are in the custody of the state. Second, some language from DeShaney has been read to suggest that state officials also have a duty to protect individuals from harm when their actions created or exacerbated a danger to the individual.

Breen I, 485 F.3d at 333 (internal citations and quotations omitted). The state-created danger theory is rooted in the second exception. See id.

The majority of the federal circuits have adopted some form of the state-created danger theory of Section 1983 liability. See id.[5] In Breen I, a panel of the Fifth Circuit

---

[5] See, e.g., Dwares v. City of New York, 985 F.2d 94 (2d Cir. 1993); Kneipp v. Tedder 95 F.3d 1199 (3d Cir. 1996); Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir. 1998); Reed v. Gardner, 986 F.2d 1122 (7th Cir. 1993); Freeman v. Ferguson, 911 F.2d 52 (8th Cir. 1990); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989); Ulrich v. Harder, 64 F.3d 567 (10th Cir. 1995); Butera v. District of Columbia, 235 F.3d 637 (D.C. Cir. 2001).

appeared to follow suit, setting out the necessary elements of a state-created danger claim: "(1) the defendant's actions created or increased the danger to the plaintiff; and (2) the defendant acted with deliberate indifference toward the plaintiff." Id. at 334-335. The Fifth Circuit also "stated that the state-created danger theory requires an identifiable victim." Id. at 335.[6] Then, approximately three months later, a majority of the Breen I panel voted *sua sponte* to grant rehearing. See Breen II, 494 F.3d at 518. On rehearing, the Breen II court withdrew and deleted from its previous opinion any recognition of the state-created danger theory. See id. Thus, the viability of the state-created danger doctrine within the Fifth Circuit remains in question.

Here, even if the Court were to assume that the state-created danger theory is viable in the Fifth Circuit, the facts as alleged in Taylor's complaint are insufficient to state a claim of recovery under this theory. In the complaint, Taylor alleges that both Officers Duck and Lindsay were acting in their official capacity, under color of law, and in the course and scope of their employment at all times relevant to the case. See Record Document 1 at ¶¶ 11-12. In effect, he is asserting that Officers Duck and Lindsay were arms of the state, not private actors, at all times relevant to this lawsuit.

Again, as a general rule, the substantive due process rights afforded under the Fourteenth Amendment of the Constitution do not impose upon state officials a duty of care to protect individuals from any and all ***private harms***. See Breen I, 485 F.3d at 333. One narrow exception to this rule, i.e., the state-created danger theory, is a state official's duty to protect individuals from harm when state actions created or

---

[6]Prior to Breen I, the Fifth Circuit had not formally approved of the state-created danger theory or applied it to uphold a plaintiff's complaint against pretrial motions or affirms an award of damages. See Breen I, 485 F.3d at 334.

exacerbated a danger to the individual. See id. This exception, under which Taylor has elected to proceed, envisions a situation where a governmental actor knowingly places a citizen in danger at the hands of a private individual. For instance, an analysis of the state-created danger theory would be appropriate in a case wherein police officers arrested a drunk driver, but left a female passenger to walk home, leading to her attack and rape. See Walding v. U.S., No SA-08-CA-124-XR, 2009 U.S. Dist. LEXIS 20549, at *39 (W.D.Tex. March 16, 2009), citing Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989). While the police officers may not have created the dangerous neighborhood or made it any more dangerous, they did leave the female passenger stranded and it was foreseeable that she would try to make it home. See id.

Here, Taylor has simply failed to allege that his injuries were caused by a private harm that was created or exacerbated by state action. Rather, he specifically plead that Officers Duck and Lindsay were acting as police officers, not private citizens. See Record Document 1 at ¶¶ 11-12. There is no allegation in his complaint that the actions of Officers Duck or Lindsay created or exacerbated a private danger/harm. Thus, regardless of the state of the law in relation to the state-created danger theory within the Fifth Circuit, Taylor's allegations simply fall outside the scope of the state-created danger theory and his Fourteenth Amendment substantive due process claim based upon this theory cannot proceed.

### J. State Law Claims.

In his Complaint, Taylor alleged a multitude of state law claims, including but not limited to vicarious liability claims against the City, excessive and unnecessary force, false arrest and imprisonment, intentional infliction of emotional distress, invasion of

privacy, assault, and battery. See Record Document 1, ¶¶ 45-51. The defendants seek to dismiss all state law claims other than use of force and detention without reasonable suspicion. See Record Document 10, ¶ 4; Record Document 21 at 7. The defendants argued that the state law causes of action identified in Taylor's Complaint are not adequately plead and the only valid state law claims are for excessive force and unlawful detention or arrest. See Record Document 21 at 7.

At this stage, the Court finds that the parties briefing of the pending state law claims and the viability of such claims is lacking. It is apparent that additional motion practice pursuant to Rule 56 will occur in this case. At that time, the parties are advised to specifically identify and address the remaining state law claims in this case. Accordingly, the Motion to Dismiss is **denied** as to Taylor's state law claims.

### III. CONCLUSION

Based on the foregoing, the defendants' Motion to Dismiss (Record Document No. 10-1) is **GRANTED IN PART** and **DENIED IN PART**. An order consistent with the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, at Shreveport, Louisiana, this 27th day of August, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE